**IT IS ORDERED as set forth below:**

**Date: September 30, 2026**

**Jeffery W. Cavender**
**U.S. Bankruptcy Court Judge**

---

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE:<br><br>JADE BRYANA MATOS-JONES,<br><br>Debtor. | CASE NO. 25-56673-JWC<br><br>CHAPTER 7 |
| JADE BRYANA MATOS-JONES,<br><br>Movant,<br><br>v.<br><br>EQUITY RESIDENTIAL MANAGEMENT, LLC AS AGENT FOR EQR PENMAN LLC D/B/A THE PENMAN APARTMENTS,<br><br>Respondent. | CONTESTED MATTER |

**ORDER**

Before the Court is the Motion to Reopen Case to Enforce Discharge Injunction and for Sanctions and Emergency Motion for Temporary Restraining Order (Doc. No.

36) (the "Motion") filed by Debtor Jade Bryana Matos-Jones. Matos-Jones seeks a contempt order against Equity Residential Management, LLC as Agent for EQR Penman LLC d/b/a The Penman Apartments ("Equity") for violating the discharge injunction by seeking to collect discharged prepetition debt. Equity filed a response in opposition to the Motion (Doc. No. 39). The Court held an evidentiary hearing June 10, 2026 (the "Hearing"), at which Matos-Jones and counsel for Equity appeared, presented evidence, and made argument.

After considering the Motion, the testimony and other admitted evidence, the record in this case,[1] and arguments of the parties presented at the Hearing, the Court makes the following findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, made applicable to this proceeding through Fed. R. Bankr. P. 7052.

**FINDINGS OF FACT**

1. Matos-Jones and Leiyana Gonzales, as co-leaseholders, entered into a residential lease agreement with Equity in August 2023 (the "Lease"). Leiyana Gonzales vacated the property in December 2024 but remains responsible for outstanding amounts under the Lease.

2. On May 22, 2025, Equity filed a dispossessory action in Fulton County State Court against Matos-Jones and Leiyana Gonzales (the "Dispossessory").

3. Matos-Jones filed this chapter 7 bankruptcy case on June 16, 2025, which stayed the Dispossessory.

[1] The Court takes judicial notice of the dockets, orders, pleadings, and reports filed in Matos-Jones' case. Fed. R. Evid. 201; *Bobadialla v. Aurora Loan Services,* 478 Fed. App'x 625 (11th Cir. 2012) (unpublished) stating "a court may take judicial notice of its own records and the records of inferior courts."

4. As of the petition date, Matos-Jones and Leiyana Gonzales owed $4,860.43 under the Lease (the "Prepetition Debt").

5. Matos-Jones continued to reside at the leased property during the bankruptcy case. Matos-Jones made efforts to work out a payment plan, but Equity indicated that it required full payment to bring the account current. (Doc. 52, Ex. 2).

6. Matos-Jones made no payments to Equity during the bankruptcy case. She testified that she was unable to make any payment because there was no way to pay only the post-petition amounts owed because her online account reflected the Prepetition Debt.

7. Equity moved for stay relief to continue the Dispossessory. (Doc. No. 25). In its motion, Equity asserted that Matos-Jones owed, at that time, $6,474.50 in post-petition charges under the Lease, for a total balance of $11,334.93.

8. Matos-Jones opposed stay relief, but the Court granted stay relief by order entered October 24, 2025. (Doc. No. 32).

9. Five days later, Matos-Jones received a discharge, and the bankruptcy case closed October 29, 2025. (Doc. No. 34).

10. Equity's attorney of record received electronic notification of the discharge immediately after entry of the discharge, and the Bankruptcy Notice Center mailed notice of the discharge to Equity on October 31, 2025. (Doc. No. 35).

11. Following stay relief, Equity reopened the Dispossessory. Matos-Jones opposed the Dispossessory, asserting, among other things, that Equity sought recovery of the Prepetition Debt. (Doc. No. 52, Ex. 5). Matos-Jones testified, however,

that monetary damages were not being sought, and Equity was only looking for possession of the rental unit. On January 5, 2026, the state court entered judgment in favor of Equity granting a writ of possession and entering judgment for $2,509, which represented rent for November 2025. (Doc. No. 52, Ex. 17). Matos-Jones vacated the property on January 21, 2026, and relocated to Florida the same day.

12. On February 9, 2026, a representative of Equity, Joe Montelongo, sent an email to email addresses of both Leiyana Gonzales and Matos-Jones, but the body of the email was addressed only to Leiyana Gonzales (Doc. 52, Ex. 7). It states,

> Hi Leiyana,
>
> I'm Joe with the corporate office of Equity Residential. This is a friendly reminder that a final statement is ready for review on your resident portal.
>
> Before March 6th, 2026, you can either close out your final statement by paying the balance in full or reply to this email to set up a payment plan with me.
>
> If neither of those options occur before this date, on March 6th, 2026, your account becomes eligible to be sent to a third party for collection. Once an account has been transferred, all communication will be handled by the third-party collection agency instead of Equity Residential.
>
> I look forward to hearing from you, and I hope you are having a great day.
>
> Thank you,
>
> Joe Montelongo
> Collection Representative.

(Doc. 52 Ex.7). Matos-Jones presented a second, identical email, but it does not contain a date. (Doc. No. 52, Ex. 8). Matos-Jones did not respond to either email.

13. Between February 10, 2026, and March 6, 2026, Matos-Jones received five phone calls from Equity. Matos-Jones did not answer the calls, but she presented screenshots of her phone showing four substantially identical voicemail transcripts from four of the calls, which stated:

> Hello, this call is on behalf of equity residential. Please be aware that there are items that need attention in order to keep your account in good standing with us. You may review your account by visiting myequityapartments.com. If you have yet received your statement, or if you have questions, please contact us at PRR at EQR.com. If you no longer wish to receive reminder calls concerning your account, please dial 1-800-377-8060 and request that your number be removed from our call list. Thank you.

(Doc. 52 Ex. 9). Matos-Jones' screen shot of the fifth call indicates her phone was unable to transcribe the voicemail, but the phone number matches the other four calls and the number provided in the voicemails. (Doc. 52 Ex. 9). Matos-Jones did not return the calls or speak to anyone at Equity from the collections department regarding her account.

14. Instead, Matos-Jones visited the online portal as directed, using her personal login. The portal showed a balance of $22,961, an amount that included the Prepetition Debt. (Doc. 52, Ex. 10).

15. Matos-Jones also presented a "statement of deposit" (the "SODA") dated Feb. 3, 2026, that she retrieved from the online portal. The SODA shows her name only and a balance of $22,961, which included the Prepetition Debt. The SODA further states that payment is due upon receipt and if not paid within 30 days of the move out date, the balance may be sent to a third-party collection agency. (Doc. 52, Ex. 6).

16. Matos-Jones presented a "Social Media Growth & Training Contract" dated August 20, 2025, between Matos-Jones' business, the Colour Agency LLC, and an individual named Sherman Ballard. (Doc. 52, Ex. 14). Matos-Jones owns the Colour Agency LLC and provides social media work to clients in Atlanta. The contract with Sherman Ballard was for an initial term of four months, with a renewal option of month-to-month thereafter. Matos-Jones testified that the contract was "in flux" and ultimately Mr. Ballard terminated it due to her instability. She provided no other evidence of why Mr. Ballard terminated the contract, when he terminated the contract, or any specific dollar amount lost as a result of the termination. She testified that her instability was attributable to Equity's conduct, which also caused emotional distress.

17. At the Hearing, Jonathan Gonzalez, leader of the internal collections team for Equity, testified on behalf of Equity. He testified that tenants' SODAs are processed when a resident moves out and reflects the account balance along with any damage and security deposit. Once a SODA is processed, he and his team contact the former resident for collection, including phone calls and emails. They do not include any specific amount on any communication, including voicemails, until they have direct contact with the former resident. An auto dialer calls anyone with an outstanding balance. If someone picks up, a live person is connected; if no one picks up, a standard voicemail is sent out.

18. Jonathan Gonzalez testified that when a resident is a debtor in bankruptcy, the bankruptcy status is added to the resident's account. If such

resident's bankruptcy covers the entire balance, the account is marked to have no communications at all, but if some of the balance remains collectable, collection emails and calls are sent out to the individual. He stated that accounts are reviewed to determine whether there is a collectable amount on the account, but he did not articulate any specific process or procedure to review the accounts for discharged amounts or how discharged amounts might be delineated from collectable amounts within the account. His testimony indicated that the review is done to determine if there are any collectable amounts on the account, and if there are, calls and emails are sent.

19. For Matos-Jones' account, Jonathan Gonzalez confirmed that her bankruptcy status was flagged on her account. He also confirmed that the initial SODA provided to Matos-Jones reflected $22,961, but the balance has since been adjusted down to $18,100, which excludes the Prepetition Debt. He could not say who requested the adjustment or when the adjustment occurred.

20. As to the February 9th email, Jonathan Gonzalez testified that the email was addressed only to Leiyana Gonzales because her name was listed first on the account, and Matos-Jones was copied on the email because they routinely copy all parties on the account.

**CONCLUSIONS OF LAW**

The Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

Section 524 of the Bankruptcy Code provides in pertinent part,

> (a) A discharge in a case under this title
> . . .
> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such [discharged] debt as a personal liability of the debtor, whether or not discharge of such debt is waived
> . . . .

11 U.S.C. § 524(a). Section 524 is meant to "'eliminate any doubt concerning the effect of the discharge as a total prohibition on debt collection efforts.' And Congress meant no doubt whatsoever: '[Section 524] is intended to insure that once a debt is discharged, *the debtor will not be pressured in any way to repay it*.'" *Green Point Credit, LLC v. McLean (In re McLean)*, 794 F.3d 1313, 1321 (11th Cir. 2015) (quoting H.R. REP. NO. 95-595, at 365–66 (1977)). The Court must ask whether the objective effect of the creditor's action is to pressure the debtor to repay a discharged debt. *Id.* at 1322. The debtor has the burden of establishing a violation of the discharge injunction by clear and convincing evidence. *Daniels v. Howe Law Firm, P.C. (In re Daniels)*, 591 B.R. 814, 822 (Bankr. N.D. Ga. 2018).

The Court first finds that the evidence does not establish that continuation of the Dispossessory or the ultimate dispossession violated the discharge injunction. Although lessors may not seek a monetary judgment on a discharged debt, they may pursue recovery of their property based on discharged debt. *See Powder Mill Ridge v. Miller (In re Miller)*, 674 B.R. 316, 331 (Bankr. D. 2025) (when lessor seeks to retake possession of leased premises, "It is of no import whether [debtor] defaulted pre-petition, pre-discharge, or post-discharge"); *In re Dabrowski*, 257 B.R. 394, 415 (Bankr. S.D.N.Y. 2001) ("proceeding in rem against the Debtor's leasehold [is] no more inconsistent with a discharge than would be a mortgagee's proceeding against

the Debtor's fee interest."). Matos-Jones asserts that the Dispossessory constituted an effort to collect the Prepetition Debt, but the evidence does not support the assertion. Matos-Jones testified that Equity was not seeking monetary damages and sought only possession of the unit, which it was entitled to do given the amounts owed on the Lease and this Court's prior grant of relief from the automatic stay for purposes of its pursuing the dispossessory. Further, the only document from the Dispossessory submitted into evidence (other than a response filed by Matos-Jones) was the judgment entered in January of 2026, which granted a monetary judgment for rent accrued in November, 2025—after the bankruptcy case was closed.[2] Matos-Jones has not argued that any post-petition amounts were discharged.[3] The Court finds Equity did not violate the discharge injunction by pursuing possession of the property and ultimately evicting Matos-Jones, nor does the evidence show that Equity sought or obtained a money judgment on the Prepetition Debt.

---

[2] The dispossessory judgment's inclusion of a monetary award for November 2025 rent is hard to square with Matos-Jones' testimony that Equity only sought possession of the unit, but the limited records presented from the state court make it impossible for the Court to understand what led to the entry of the judgment in that form. Regardless, the judgment did not include an award for the Prepetition Debt.

[3] Matos-Jones did not assert that Equity violated the discharge injunction by pursuing collection of any of the post-petition charges, and neither party presented any evidence or argument related to that issue. The Court therefore makes no ruling on that issue but notes that courts appear to be split on the question of whether post-petition rent is discharged when, as in this case, a lease is rejected by operation of § 365(d)(1). *Compare Miller v. Chateau Communities, Inc. (In re Miller )*, 282 F.3d 874 (6th Cir.2002) (where debtor vacated prior to petition date, all amounts arising under lease are discharged); *In re Humbert*, 567 B.R. 512 (Bankr. N.D. Ohio 2017) (finding post-petition rent discharged and lessor's action to obtain judgment for post-petition rent violated discharge) *with In re Werbinski*, 271 B.R. 514 (Bank. E.D. Mich) (finding lease reverts back to debtors after rejection and lessor may pursue all rights under lease); *Johnson v. Manatee Bay Apts. Corp. (In re Johnson)*, 460 B.R. 328 (Bankr. S.D. Fla. 2011) (finding under Florida law that post-discharge rent not discharged where debtors remained in property and paid rent during case); *see also In re Licea*, 2018 WL 898221 (Bankr. C.D. Cal. Feb.12, 2018).

The Court next considers the February 9th email and concludes it violated the discharge injunction. The email directs the recipient to review a final statement on an online portal, directs the recipient either to pay the full account balance or contact Equity for a payment plan with a warning that the matter would be referred to a third party for collection if neither occurred within less than a month. At that time, the online portal and SODA showed the full balance that included the discharged Prepetition Debt. Although the email was addressed to Leiyana Gonzales only in the body, Matos-Jones was copied, and the online portal and SODA (which shows only Matos-Jones' name) showed the full balance with the Prepetition Debt. The Court finds the objective effect of the Feb. 9th email was to pressure Matos-Jones to pay the discharged Prepetition Debt, and it violated the discharge injunction.[4]

The Court next finds that the four phone calls for which Matos-Jones included voicemail transcripts violated the discharge injunction.[5] Those calls were directed specifically to Matos-Jones and directed her to the online portal to review her account. As with the email, the online portal and SODA showed the full balance with demands to pay the balance, including the Prepetition Debt. The objective effect of these calls was to pressure Matos-Jones to pay the full balance showing on the online account, which included the discharged Prepetition Debt. The fact that the calls did not state

[4] Matos-Jones submitted a second, undated email substantially similar to the February 9th email. Because it was undated, and Matos-Jones could not say when she received it, the Court does not find clear and convincing evidence that the second email violated the discharge injunction.

[5] Matos-Jones received a fifth call and voicemail from the same number, but there is no evidence establishing the contents of the voicemail, and the Court does not find clear and convincing evidence that the fifth phone call violated the discharge injunction.

a specific amount or demand payment specifically does not change the result. Nothing in the voicemail suggests that answering or returning the call would have put Matos-Jones in touch with a live person who might have information contrary to the online account. Nothing in the evidence shows that Equity presented anything to Matos-Jones clarifying that the Prepetition Debt portions of the SODA and online balances did not apply to her, or that she had any option to pay less than the amounts shown.

Neither the SODA, email communication, nor phone calls contained protective language typical of collection efforts after entry of a discharge that make clear they are not seeking to collect discharged indebtedness. *See Mele v. Bank of America Home Loans (In re Mele)*, 486 B.R. 546, 557–58 (Bankr. N.D. Ga. 2013); *Ohai v. Delta Community Credit Union (In re Ohai)*, 660 B.R. 737, 746 (Bankr. N.D. Ga. 2024). Equity failed to take proper precautions to exclude the discharged debt from the SODA or make clear it was not seeking to collect on the discharged Prepetition Debt as part of its ongoing collection efforts. The Court finds the objective effect of the phone calls directing Matos-Jones to an online portal showing discharged debt was to pressure her to pay the discharged Prepetition Debt. *See In re Strong*, No. 25-03068, 2026 WL 1557450, at *11 (Bankr. D.S.C. Apr. 13, 2026) (finding that landlord violated discharge injunction by pursuing payment of discharged debt through presenting resident ledger including pre- and post-petition debt and failing to provide payment method on post-petition debt only).

Having determined that Equity violated the discharge injunction, the Court must determine whether Equity may be found in contempt and subject to sanctions.

As a threshold matter, the Court easily concludes that Equity had notice of the discharge and that it intended the actions that violated the discharge injunction. *See In re McLean*, 794 F.3d at 1323. There is no dispute, and the record in the bankruptcy case makes clear, that Equity was aware of the bankruptcy case and had actual knowledge of the discharge. Further, Equity does not suggest that the Feb. 9th email and four phone calls were unintentional. Instead, Equity intentionally sent them in the ordinary course of Equity's regular collection efforts, and there is no indication or any argument that Matos-Jones received them by mistake.

The Supreme Court has instructed that before the Court can hold Equity in contempt, the Court must determine there is "no fair ground of doubt" that Equity violated the discharge injunction. "In other words, civil contempt may be appropriate if there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful." *Taggart v. Lorenzen*, 587 U.S. 554, 557, 139 S.Ct. 1795, 1799 (2019). "[A] good-faith belief that an action taken does not violate the discharge injunction will not shield a party if the belief is not objectively reasonable." *In re Cowan*, No. 18-54666, 2020 WL 7330049, at *6 (Bankr. N.D. Ga. Dec. 11, 2020). The burden to establish a fair ground of doubt as to whether the actions violated the discharge injunction rested upon Equity.

The Court finds no fair ground of doubt that the Feb. 9th email and the transcribed phone calls violated the discharge injunction. Equity sent multiple collection emails and phone calls directing Matos-Jones to an online portal that demanded payment in full on a balance that included discharged debt. Nothing in the

communications or information provided to Matos-Jones suggested that the information on the online portal or SODA was incorrect or limited to non-discharged amounts. Nor did the communications contain any protective language making clear they were not seeking collection of any debts discharged through bankruptcy. The Court finds no fair ground of doubt that the emails and phone calls violated the discharge injunction, and the Court finds Equity in contempt of the discharge injunction.

Upon a finding of contempt, sanctions may be imposed "to coerce the defendant into compliance with the court's order, [or] to compensate the complainant for losses sustained." *In re McLean*, 794 F.3d at 1323. Matos-Jones requests that the Court order Equity to correct its ledger to remove the discharged Prepetition Debt and prohibit it from transferring the account to a third-party for collection. At the hearing, Jonathan Gonzalez asserted that Equity already reduced Matos-Jones' account to remove the Prepetition Debt, and there was no evidence to contradict this assertion. If Equity has not marked the Prepetition Debt as discharged or otherwise deducted it from Matos-Jones' account, it must do so on a permanent basis. Further, Equity must not take any further collection actions on the Prepetition Debt, including transferring it to a third-party for collection.

"Under § 105, bankruptcy courts may impose compensatory sanctions for actual damages that a debtor incurs as a result of a creditor's violation of the discharge injunction," which can include emotional distress damages. *In re McLean*, 794 F.3d at 1325. Matos-Jones requests compensatory damages including actual

damages from the wrongful eviction and emotional distress damages, return of a $400 security deposit, punitive damages, and costs incurred. The burden rested on Matos-Jones to prove actual damages, punitive damages, or the necessity for other sanctions.

Matos-Jones presented no evidence of out-of-pocket monetary expenses resulting from the discharge violation, and she has no attorney's fees as a *pro se* party. Matos-Jones argued that her relocation to Florida caused various damages, but the Court has determined that the Dispossessory and eviction were not discharge violations, and the collection efforts occurred after she moved to Florida. Further, Matos-Jones provided no evidence of the cost of relocation, and it is unclear why relocation to Florida was necessary after the dispossession. There is no basis to award damages based on the relocation to Florida or other out-of-pocket expenses.

Matos-Jones argued her business has suffered as a result of the discharge violations, but the only evidence presented related to her business is a contract titled "Social Media Growth & Training Contract" between Matos-Jones' business, The Colour Agency LLC, and Mr. Ballard (Doc. No. 52, Ex. 14). Matos-Jones testified generally that Mr. Ballard terminated the contract because of her instability and Equity's conduct, but she offered no further testimony or evidence explaining how Equity's discharge violations caused Ballard to terminate the contract. She did not testify or provide any evidence related to when he terminated the contract or how much revenue she lost as a result of the termination. The contract was dated August 20, 2025, with a four-month term and optional monthly renewal terms. There was no

evidence that the contract extended beyond the initial four-month term or that it was still in place by February, 2026, when the discharge violations occurred. Further, the contract is not with Matos-Jones individually but with her LLC, and her LLC is not entitled to recover damages for any violations of her individual discharge. *See Bahnsen v. Discover Fin. Servs. Inc. (In re Bahnsen)*, 547 B.R. 779, 787 (Bankr. N.D. Ohio 2016) (husband lacked standing to file suit for violation of his wife's discharge); and *Kiebala v. Boris*, No. 1:16-cv-7478, 2017 WL 4339947, at *4 (N.D. Ill. Sept. 29, 2017) (business owner cannot recover for injuries derivative of injuries to business).

Matos-Jones made some additional statements about her clients being in Atlanta and that her work has suffered from the relocation, but, again, there was no evidence indicating how much work she lost, when she lost it, or any other evidence of actual monetary losses beyond the bare assertion that being in Florida hurt her business. The Court simply does not have sufficient evidence to establish any actual damages related to the business or income.

Matos-Jones also presented insufficient evidence to recover damages for emotional distress. For emotional distress damages "a plaintiff must (1) suffer significant emotional distress, (2) clearly establish the significant emotional distress, and (3) demonstrate a causal connection between that significant emotional distress and the violation of the [discharge injunction]." *Lodge v. Kondaur Cap. Corp.*, 750 F.3d 1263, 1271 (11th Cir. 2014). Generally, a party must also produce corroborating evidence to establish significant emotional distress. *Steed v. GSRAN-Z LLC* (*In re Steed)*, 2021 WL 1186482, at *8 (Bankr. N.D. Ga. Mar. 26, 2021). Matos-Jones

testified generally that Equity's communications and the balance reflected on the resident portal and SODA caused her emotional distress, but she provided no other testimony or corroborating evidence. Accordingly, the Court will not award emotional distress damages.

Nor is this case appropriate for punitive damages. Courts have "traditionally been reluctant to grant punitive damages absent some showing of reckless or callous disregard for the law or rights of others." *In re McLean*, 794 F.3d at 1325 (quoting *Goichman v. Bloom (In re Bloom)*, 875 F.2d 224, 228 (9th Cir. 1989)). The Court does not find, and Matos-Jones makes no argument, that Equity acted recklessly or with a callous disregard for the law. Although Equity should take better care in handling resident accounts in bankruptcy, the Court heard no evidence that Equity is a persistent violator of discharge injunctions, and their conduct here does not warrant punitive damages.

The Motion requests a return of a $400 security deposit, arguing Equity failed to comply with O.C.G.A. § 44-7-33 warranting a return of the security deposit. Matos-Jones provided no evidence at the Hearing related to the security deposit. Further, there is no dispute that Matos-Jones owes substantially more than the security deposit, and the Court finds she holds no legitimate claim for a return of the security deposit. *See* O.C.G.A. § 44-7-34 ("Nothing in this Code section shall preclude the landlord from retaining the security deposit for nonpayment of rent or of fees for late payment . . ."); 11 U.S.C. § 553 (preserving rights of setoff for mutual debts); *In re*

*Bowers*, 666 B.R. 374, 390 (Bankr. C.D. Cal. 2025) (lessor may offset security deposit against prepetition amounts owed on lease).

Although the Court finds Matos-Jones failed to provide evidence warranting compensatory or punitive damages, the evidence clearly and convincingly established that Equity violated the discharge injunction. The Court "need not and will not simply overlook Debtor's statutory right to be free of collection attempts in violation of the discharge injunction." *In re Musto*, No. 8:19-bk-03452, 2021 WL 99343, at *4 (Bankr. M.D. Fla. Jan. 6, 2021). Based on the circumstances here, the Court finds it appropriate to award nominal damages to Matos-Jones. The Court awards $500 for each of the 5 discharge violations, for a total of $2,500.

**<u>CONCLUSION</u>**

For the foregoing reasons,

IT IS ORDERED that the Motion is GRANTED IN PART and DENIED IN PART. Equity is found to be in contempt for violating the discharge injunction; to the extent not already done, Equity must permanently mark the Prepetition Debt as discharged in its records and deduct the Prepetition Debt from Matos-Jones' account; Equity is prohibited from taking any further collection activity in connection with the Prepetition Debt, including transferring the discharged debt to a third-party for collection; Jade Bryana Matos-Jones is awarded damages in the amount of $500 per discharge violation for a total award of $2,500. The Motion is DENIED as to any further request for damages and sanctions.

The Clerk is directed to serve a copy of this Order on Jade Bryana Matos-Jones, Equity Residential Management, LLC as Agent for EQR Penman LLC d/b/a The Penman Apartments' counsel of record, and the chapter 7 trustee.

END OF DOCUMENT